IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MAURICIO OROZCO-RIOS, | ) | |
| | ) | |
|     Movant, | ) | |
| | ) | |
| v. | ) | No. 3:14-cv-00568 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Trauger |
| | ) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION

Movant Mauricio Orozco-Rios ("Orozco" or "the movant"), a federal prisoner presently housed at FCI Ray Brook in Ray Brook, New York, brings this *pro se* action pursuant to 28 U.S.C. § 2255 to set aside, vacate and correct an allegedly illegal sentence imposed by this court on March 9, 2011. Having considered the underlying record as a whole and the parties' arguments, including the movant's reply brief, the court finds, for the reasons set forth herein, that the movant is not entitled to relief on the basis of his claim that his guilty plea was involuntary. The court also finds, however, that an evidentiary hearing is required and that counsel must be appointed pursuant to Rule 8 (c) of the Rules Governing § 2255 Proceedings to consider the movant's claims of ineffective assistance of counsel at sentencing.

**I.  Procedural Background**

In August 2009, Orozco and twelve co-defendants were indicted in a single-count indictment on a charge of conspiracy to possess with intent to distribute 5 kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance. (Case No. 3:09-cr-00186, ECF No. 48 (all subsequent references to the record will be to this case, unless otherwise indicated).) A Third Superseding Indictment, issued in March 2010, charged the same cocaine conspiracy and added a charge of knowing possession of one or more firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c). (ECF No. 342.)

On October 22, 2010, Orozco submitted a petition to enter a plea of guilty. (ECF No. 479.) Although there was no plea agreement and no agreement regarding sentencing, the United States agreed to dismiss Count Two of the indictment upon Orozco's being sentenced on Count One. (*Id.* at 6.)

At the plea hearing, the Assistant U.S. Attorney read a statement of facts setting forth the basis for the guilty plea and specifically noted that, for purposes of determining the advisory sentencing guideline range, "it is the position of the United States with respect to relevant conduct under Section 1B1.3, [that] the total amount of cocaine for which the defendant is responsible is between at least 50 up to 150 kilograms. This amount is based upon the content of the intercepted calls [from wiretaps used in the investigation] and the amount of cocaine seized in both Nashville and Atlanta on August 14, 2009." (Plea Hearing Tr., ECF No. 702, at 19.) In response to this statement, the movant conceded that he was guilty of the crime charged and that the United States would be able to prove that he had conspired with others to possess with intent to distribute 5 kilograms or more of cocaine, but he expressly reserved the right to contest the quantity of cocaine that should be considered for sentencing purposes. (*Id.* at 20–21.) The court explained to the movant that, while the United States' position was that he was responsible for 50 to 150 kilograms of cocaine, he was not admitting to that amount by pleading guilty, and the movant acknowledged that he understood this explanation. (*Id.*) The court further advised the movant that the advisory guideline range and the sentence ultimately imposed would be dependent on the quantity of drugs for which the United States established his responsibility. (*Id.* at 21.)

After Orozco entered his guilty plea, the probation office prepared a presentence investigation report ("PSR") (ECF No. 683), attributing responsibility to Orozco for conspiring to distribute 127.5 kilograms of cocaine and 17.48 kilograms of marijuana. The total quantity of cocaine was based on 42.5 kilograms of cocaine that were referenced during intercepted phone calls between Orozco and his co-conspirators and others, another 9 kilograms that were recovered on the date of Orozco's arrest in a co-conspirator's vehicle, and 76 kilograms of cocaine recovered the same day from a residence in Atlanta that had been identified by DEA agents as a "stash house" used by the co-conspirators. (ECF No. 683, at 6–8.) The marijuana was discovered in the garage of Orozco's home on the day he was arrested. (*Id.* at 8) Based on this quantity of drugs, the PSR recommended a base offense level of 36, *see* U.S.S.G. § 2D1.1(2) (2009 ed.), and a final offense level of 41, which incorporated a 2-level increase for possession of a firearm; a 4-level increase for being a leader or organizer of the conspiracy; a 2-level increase for obstruction of justice; and a 3-level reduction for acceptance of responsibility.

Both parties prepared sentencing positions in response to the PSR. Orozco, through counsel, argued that attributing responsibility to him for the 76 kilograms recovered in Atlanta was unwarranted, but he did not expressly object to being held responsible for the other 51.5 kilograms of cocaine. Counsel objected to the offense-level increases for possession of a firearm and obstruction of justice, but did not object to the increase for the defendant's being a leader or organizer of the conspiracy. (ECF No. 620.)

In its sentencing memorandum, the United States agreed with the probation office that the movant should be found responsible for the entire 127.5 kilograms of cocaine but noted that, "[r]egardless of whether this Court finds him responsible for those 76 additional kilograms, if the defendant does not contest the facts in the PSR describing the possession and distribution of the other 51.5 kilograms, then the defendant's base offense level" would not be affected. (ECF No. 631, at 3.) The United States estimated that the applicable guideline range would be 360 months to life imprisonment and recommended that the court sentence Orozco at the bottom of the range, to 360 months of imprisonment. (ECF No. 632, at 1.)

At the sentencing hearing, conducted in two parts, on March 3 and 9, 2011, the court noted Orozco's objection to the inclusion of the 76 kilograms of cocaine recovered in Atlanta, but, at that time, the court mistakenly recalled that Orozco had admitted responsibility at the plea hearing for at least 50 kilograms of cocaine. Neither party called into question that recollection. Counsel for Orozco added that his client also objected to the 17.48 kilograms of marijuana included in the calculation of the total quantity of drugs for sentencing purposes. Counsel further voiced his belief at that time that the inclusion of the cocaine found in Atlanta and the marijuana found in Orozco's garage would affect the court's calculation of the base offense level. Counsel for the government again voiced his position that inclusion of the amounts to which Orozco objected would have no effect on the base offense level, because the defendant "was not objecting to the 51.5 kilograms of cocaine described in the presentence report." (Sentencing Hearing Tr. Vol. 2, at 35, ECF No. 704, at 6.) After additional discussion and a brief recess, counsel for Orozco conceded that inclusion of the drug quantities to which he objected would have no effect on the base offense level. The court therefore declined to make any factual determination as to whether Orozco should be considered responsible for the 76 kilograms recovered in Atlanta or the

marijuana recovered in Nashville, "because it doesn't make any difference in the guideline range." (*Id.* at 37–38, ECF No. 704, at 8–9.)

The prosecutor put on witnesses to support the PSR enhancements for possession of a firearm in furtherance of the conspiracy and for obstruction of justice. At the close of the hearing, defense counsel argued that these enhancements should not apply. Despite taking this position, he nonetheless asked the court "to consider imposing the minimum sentence within the guideline range" of 360 months to life, as found in the PSR. (*Id.* at 73/102.)

In issuing its ruling on sentencing, the court stated that "no finding [was] necessary" as to the amount of drugs involved in the conspiracy, because the amounts to which the defendant expressly objected, including the 76 kilos of cocaine found at the stash house in Atlanta and the marijuana found in the August 14, 2009 search, did not make any difference in the quantity for sentencing purposes under the guidelines. (Tr. at 90/60.) Defense counsel, again, did not correct the court's erroneous recollection that Orozco had agreed at the plea hearing that he was responsible for conspiring to distribute at least 50 kilograms of cocaine. The court accepted the petition to plead guilty and sentenced the movant, in accordance with defense counsel's and the prosecutor's recommendations, to the minimum advisory guideline range of 360 months' incarceration and 5 years of supervised release.[1]

Judgment was entered and Orozco, through counsel, filed a timely notice of appeal. (ECF No. 667.) After filing the notice of appeal, Orozco's then-counsel was permitted to withdraw and the Sixth Circuit appointed new counsel. On appeal, Orozco raised only one issue: that this court erred in declining specifically to address his drug-quantity objections based on a mistaken belief that Orozco had admitted responsibility for at least 50 kilograms of cocaine in his plea agreement. The Sixth Circuit rejected this argument, noting that, although the court had mistakenly recalled that Orozco had admitted responsibility for more than 50 kilograms of cocaine, "the court was entitled to credit counsel's concession that Orozco-

---

[1] The guidelines range for Orozco's offense was determined based upon a base offense level of 36, which resulted from defense counsel's concession that the PSR properly attributed responsibility to Orozco for at least 51.5 kilograms of cocaine. See U.S.S.G. § 2D1.1(c)(2) (2009 guidelines). The court accepted the PSR's other findings, including the increases for possession of a firearm, leadership in the conspiracy, and obstruction of justice. The United States moved for a 2-level adjustment for acceptance of responsibility (rather than 3 levels), because the defendant pleaded guilty on the eve of trial, yielding a total offense level of 42 rather than the 41 reached in the PSR. The movant's criminal history category was I, and the resulting advisory guideline range was 360 months to life.

Rios was responsible for more than 50 kilograms of cocaine. *United States v. Arellano-Garcia*, 503 F. App'x 300, 303 (6th Cir. Oct. 23, 2012), *petition for cert. denied*, 133 S. Ct. 1483 (Feb. 25, 2013). The Sixth Circuit held that the sentence was procedurally reasonable and affirmed.

Orozco filed his timely § 2255 motion in this court on February 20, 2014.

## II.     The Current Motion

The movant asserts two claims for relief:

(1) that the movant's guilty plea was involuntarily entered, because the movant believed he was pleading guilty to a conspiracy involving 5 kilograms of cocaine, while the court was under the misconception that he had pleaded guilty to a conspiracy involving a minimum of 50 kilograms of cocaine; and

(2) that defense counsel was ineffective insofar as he: (a) permitted Orozco to plead guilty involuntarily, knowing that the movant was under the impression that he was pleading guilty to a conspiracy involving 5 kilograms of cocaine while the court believed he had pleaded guilty to conspiracy to distribute 50 kilograms; and (b) requested that the court impose a guidelines sentence of 360 months instead of a statutory sentence of 20 years.

Shortly after the motion was filed, the court conducted a preliminary examination thereof and determined that it stated colorable claims for relief. The court entered an order directing the United States to answer, plead or otherwise respond to the petition. Rule 5, Rules Gov'g § 2255 Proceedings. The United States has now filed its response.

## III.    Discussion

This court must vacate and set aside a movant's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, the movant "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

If a Section 2255 motion is not dismissed, "the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted . . . to determine whether an evidentiary

hearing is warranted." Rule 5(a), Rules Governing § 2255 Proceedings; *see also Ross v. United States*, 339 F.3d 483, 490–91 (6th Cir. 2003). Where a factual dispute exists, "the habeas court mu*st hold an evidentiary hearing* to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (emphasis added) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)); *see also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) ("An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief."). "[T]he burden on the petitioner in a habeas case for establishing an entitlement to an evidentiary hearing is relatively light." *Valentine*, 488 F.3d at 333 (citing *Turner*, *supra*); *see also Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003).

### A. Voluntariness of the Guilty Plea

In 1969, the United States Supreme Court held that, prior to the acceptance of a guilty plea, there must be "an affirmative showing that it [is] intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A guilty plea cannot be knowing and voluntary unless entered with the defendant's full understanding of the charges against him and the possible consequences of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970).

In this case, the petition to enter a plea of guilty specified that Orozco was facing a maximum sentence of life imprisonment. (ECF No. 479, Plea Petition ¶ 5.) In it, the movant acknowledged that the court would impose a sentence sufficient but not greater than necessary to satisfy the goals established in 18 U.S.C. § 3553(a) and that one consideration in sentencing was the United States Sentencing Guidelines. The plea petition stated that these guidelines are advisory but that the court must take them into account together with other sentencing goals in fashioning the appropriate sentence. The movant acknowledged that his attorney's estimate of the sentencing range that might apply in his case was simply an estimate, that the advisory guideline range would be calculated by the United States Probation Officer and that the final guideline calculation would be made by the court. (*Id.* ¶ 6.)

During the plea hearing, the court informed the movant that the indictment charge to which he was pleading guilty had "a minimum mandatory prison term of ten years on up to life" as well as a period of supervised release of at least five years. (ECF No. 702, Plea Hearing Tr. at 5.) The court also ascertained the movant's understanding that his attorney's estimate of the applicable guideline range was

not binding on the court and that the guideline range itself was not binding on the court, but that the lowest possible sentence would be ten years. (*Id.* at 11.) Orozco agreed that no one had promised what sentence would be imposed if he pleaded guilty and that he had not been pressured to plead guilty. The court itemized the rights the movant was giving up by pleading guilty and ascertained that Orozco understood that he was giving up these rights. Orozco confirmed that he had gone over the plea petition thoroughly with his attorney and that he understood it. (*Id.* at 9–10 ("We were talking all day yesterday about this.").)

In addition, the federal prosecutor summarized the facts the United States would prove if this matter went to trial and concluded by stating:

> For purposes of determining the applicable advisory sentencing range of the United States Sentencing Guidelines, it is the position of the United States with respect to relevant conduct under Section 1B1.3, the total amount of cocaine for which the defendant is responsible is between at least 50 up to 150 kilograms.
>
> This amount is based upon the content of the intercepted calls and the amount of cocaine seized in both Nashville and Atlanta on August 14, 2009.

(ECF No. 702, Plea Hearing Tr. at 19.) During the court's questioning, Orozco conceded that the government could prove the elements of the conspiracy against him and that he was responsible for conspiring to distribute "over five kilograms" of cocaine. (*Id.* at 20.) Regarding the quantity of drugs involved in the conspiracy, the following colloquy took place:

> THE COURT: Let me ask, I presume you have reserved the right to contest the quantity?
>
> MR. GANT: Yes, Judge.
>
> THE COURT: Okay. so, Mr. Orozco-Rios, Mr. Hannafan is going to contend that you're responsible and that your guideline should be set on the basis of 50 to 150 kilograms of cocaine. You are not admitting that, okay? Do you understand that?
>
> MR. OROZO-RIOS [sic]: Okay, yes.
>
> THE COURT: You are not admitting that quantity. . . . You are admitting that you conspired to possess and distribute at least five kilograms of cocaine. Okay?
>
> MR. OROZO-RIOS [sic]: Yes, I accept that.
>
> THE COURT: And the government is going to try to maintain that you are responsible for a whole lot more than that which will make a difference in whatever the advisory guideline is. Okay? It's dependent very much on the quantity of drugs. Okay?
>
> MR. OROZO-RIOS [sic]: Yes.

(*Id.* at 20–21.) In other words, the transcript of the plea agreement makes it clear that Orozco was not pleading guilty to conspiracy to distribute no more than 5 kilograms of cocaine; rather, he pleaded guilty to conspiring to distribute "5 kilograms *or more*" of cocaine. (ECF No. 342, 3d Superseding Indictment (emphasis added).) The court read the indictment charge to him, and Orozco stated that he understood the charge. (Plea Hearing Tr., ECF No. 702, at 3–4.)

The court also confirmed that Orozco was not under the influence of alcohol or drugs and was fully competent to enter a plea of guilty, and explained that he would have the right to appeal his sentence. The court also noted that the reason for asking "all these questions" was to "make sure that [the defendant was] voluntarily pleading guilty." (*Id.* at 13.) The court expressly found that there was a factual basis for the plea, that Orozco had demonstrated that he was in full possession of his faculties and competent to plead guilty, that he understood the nature of the charge and both the minimum and maximum penalties provided by law, and that he was offering to plead guilty voluntarily. (*Id.* at 21–22.)

The court reserved acceptance of the plea until the probation office had prepared the PSR. The court formally accepted the plea at the sentencing hearing. In imposing the sentence, the court repeated the error made earlier during the sentencing hearing, that Orozco was pleading "guilty to a conspiracy to distribute between 50 and 150 kilograms of cocaine over the course of [less than one year]." (ECF No. 704, at 105–06.) Nonetheless, it remains clear that Orozco voluntarily pleaded guilty to conspiracy to distribute 5 kilograms *or more* of cocaine, with full knowledge that the government contended that he was involved in a conspiracy to distribute much more than 5 kilograms and that his sentence would be dependent on the quantity set forth in the PSR and established by the government. The record contradicts Orozco's contention that believed he was pleading guilty to a charge of conspiring to distribute *no more than* 5 kilograms of cocaine.

The court therefore finds that the record fully establishes that Orozco's guilty plea was voluntary. The movant is not entitled to relief on the basis of this claim.

### B. Ineffective Assistance of Counsel

Defendants are guaranteed the effective assistance of counsel by the Sixth Amendment. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), the movant must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id.* at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

> The *Strickland* test also applies to ineffective-assistance claims in cases involving guilty pleas:
>
> In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)], and *McMann v. Richardson*, [397 U.S. 759 (1970) ]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) (footnote omitted).

Because he is seeking relief under § 2255, the movant bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Insofar as Orozco argues that his attorney was ineffective for permitting him to plead guilty involuntarily "whereas counsel was aware that movant was under the impression that he was pleading guilty to five kilograms of cocaine" (§ 2255 Motion at 4), the court finds, for the reasons discussed above, that the record conclusively shows that the guilty plea was voluntary and that Orozco understood that he was pleading guilty to a conspiracy to distribute 5 *or more* kilograms of cocaine. Because the record establishes that the plea was voluntary, Orozco cannot show that his counsel's performance in ensuring

the voluntariness of the plea was deficient or that Orozco. Orozco is not entitled to an evidentiary hearing or to relief on the basis of this claim.

Orozco also contends, however, that his counsel was ineffective at sentencing for, among other things, requesting a guideline sentence of 360 months instead of a statutory minimum sentence. (ECF No. 1, at 4.) Regarding this claim, the record does not "conclusively show" that Orozco's claim has no merit. Consequently, the court finds that an evidentiary hearing is required to address whether his counsel's performance was constitutionally deficient insofar as he requested a guideline-range sentence of 360 months, which itself apparently arose from counsel's failure to object to attributing responsibility to Orozco for distributing at least 50 kilograms of cocaine or to correct the court's error in recalling that Orozco had admitted responsibility for distributing at least that amount of drugs. *Cf. Howard v. United States*, 485 F. App'x 125, 130 (6th Cir. 2012) (citing § 2255 and articulating standard for whether a § 2255 movant is entitled to an evidentiary hearing). The fact that counsel requested a guideline-range sentence came as a surprise to the court and, it appears from the record, to the prosecuting attorney as well. Defense counsel also failed to raise the issue of sentencing disparity[2] or to argue that mitigating factors, including the defendant's apparent remorse, should be considered as a basis for a downward variance from the advisory guideline range. The court therefore finds that an evidentiary hearing is required to determine whether counsel's performance at sentencing fell below the standard of reasonableness and whether the movant client was prejudiced thereby.

The court will therefore appoint counsel, who shall be granted time within which to file an amended § 2255 motion. A hearing will be scheduled to take place shortly thereafter.

---

[2] Twelve co-conspirators were indicted and sentenced in the same criminal case with Orozco, most of whom pleaded guilty and all of whom were also sentenced by this court. Of these co-conspirators, none received a sentence even half as lengthy as Mr. Orozco's. Although Orozco was considered the lead defendant and to have a leadership role in the conspiracy, the co-defendant with the second highest level of responsibility in the conspiracy after Mr. Orozco, Martin Martinez, who was found to be the link to the Atlanta market and who, the court observed, displayed no remorse for his involvement in the conspiracy, received a sentence of only 135 months. Sixto-Arellano Garcia, the only co-defendant who went to trial instead of pleading guilty, was sentenced to 240 months, the mandatory minimum in his case because he had a prior felony drug offense (*see* Information Alleging a Prior Conviction Pursuant to 21 U.S.C. § 851, ECF No. 491), and to a mandatory 60 months consecutive to that sentence, for a total effective sentence of 300 months. Orozco had a criminal history category of I. The other co-defendants received sentences in the amounts of 128, 120, 70, 63, 60, 50, 33, and, in the case of Lourdes Rios, 18 months.

**IV.    CONCLUSION**

The record conclusively shows that Orozco is not entitled to relief on the basis of his claims that his plea was involuntary or that his counsel was ineffective insofar as he permitted Orozco to enter an involuntary plea. However, the court finds that an evidentiary hearing is required to address Orozco's claim that his counsel was constitutionally ineffective at sentencing. An appropriate order is filed herewith, appointing counsel and scheduling additional briefing.

_____
Aleta A. Trauger
United States District Judge